Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Kat Boatman*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| Kat Boatman, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Hartford Life and Accident Insurance Company; Total System Services, Inc.; Group Long Term Disability Plan for Team Members of Total System Services, Inc., | |
| Defendants. | |

Now comes the Plaintiff Kat Boatman (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.      Upon information and belief, Defendant Total System Services, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford").  The specific Hartford group long-term disability policy is known as Group Policy No.: GLT-402800 (hereinafter referred to as the "Policy").  The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4.      Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Group Long Term Disability Plan for Team Members of Total System Services, Inc. (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5.      Upon information and belief, Hartford functioned as the claim administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Hartford.

6.     Hartford operated under a conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7.     Hartford's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8.     The Company, Hartford and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

9.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

10.    Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Your Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

11.    Assuming the issue is ripe before the Court (i.e. the "Your Occupation" timeframe in the Plan and Policy has expired at the time of adjudication by the Court), Plaintiff also seeks a determination that she is disabled and meets the "Any Occupation" definition of disability set forth in the Plan and/or Policy as all the evidence she submitted to Hartford supports a determination by the Court that she meets the Plan and/or Policy's "Any Occupation" definition of disability such that she is also entitled to these benefits.

12.     After working for the Company as a loyal employee, Plaintiff became disabled on or about January 28, 2015, due to serious medical conditions and was unable to work in her designated occupation as a Supervisor, Contact Center.  Plaintiff has remained continuously disabled as that term is defined in the relevant Policy for both "Your Occupation" and "Any Occupation" benefits since the day she became disabled and has not returned to work in any occupation as a result of her serious medical conditions.

13.     Following the onset of her disability, Plaintiff filed a claim for long-term disability benefits under the relevant Policy which was administered by Hartford, meaning it made every decision in Plaintiff's long-term disability claim, which was to deny it.

14.     Upon information and belief, the relevant Hartford Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

"Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:

1) Your Occupation during the Elimination Period;
2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
3) after that, Any Occupation.

15.     In support of her claim for long-term disability benefits, Plaintiff submitted to Hartford medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

16.     In a letter dated May 28, 2015, Hartford informed Plaintiff it was denying her claim for long-term disability benefits.

17.     As part of its review of Plaintiff's claim for long-term disability benefits, Hartford obtained a medical records only "paper review" of Plaintiff's claim from a physician of its choosing, Joseph Rea, M.D.  Hartford did not disclose the name of the

reviewing physician or his report to Plaintiff until after it rendered its May 28, 2015 denial of her claim.

18.     Upon information and belief, Plaintiff alleges Dr. Rea may be a long time medical consultant for the disability insurance industry and/or Hartford.   As a result, Plaintiff alleges Dr. Rea may have an incentive to protect his own consulting relationship with the disability insurance industry and/or Hartford by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and which supported the denial of Plaintiff's claim.

19.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Hartford's May 28, 2015 denial of her claim.

20.     In support of her appeal and claim for long-term disability benefits, Plaintiff submitted to Hartford additional medical, vocational and lay witness evidence which demonstrated that she met any definition of disability set forth in the Policy.

21.     Plaintiff submitted to Hartford a November 11, 2015 narrative letter authored by her treating board certified physician who opined, "…I wholeheartedly agree that [Plaintiff] has been unable to work as a contact center supervisor since January 28, 2015 and…I believe her to be unable to work in any occupation…"

22.     Plaintiff submitted to Hartford a November 9, 2015 narrative letter authored by another of Plaintiff's treating board certified physicians who opined, "I also feel it is reasonable to assume that [Plaintiff] has been unable to work in any occupation since [January 28, 2015], and will continue to be unable to work in any occupation indefinitely."

23.     Plaintiff also submitted to Hartford a Functional Capacity Evaluation report dated September 18, 2015, wherein after an extensive several hour evaluation, a qualified

physical therapist determined, "…[Plaintiff] would not be able to function at a ***sedentary work category***." (Original emphasis).

24.     Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated December 14, 2015, who after reviewing Plaintiff's aforementioned evidence, the definition of disability in the Policy as well as interviewing her concluded, "To a reasonable degree of vocational probability, for the reasons referenced in my report, [Plaintiff] is not able to work in any occupation and meets the own occupation and any occupation definition of disability in the Hartford policy."

25.     Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or any work environment.

26.     In addition to the medical records and reports submitted to Hartford, Plaintiff submitted four (4) sworn affidavits from herself, her husband, her friend and her prior co-worker, who all confirmed that Plaintiff is unable to work in any occupation and that her medical conditions had not improved in any meaningful way since her date of disability.

27.     As part of its review of Plaintiff's claim for long-term disability benefits, Hartford obtained a medical records only "paper review" of Plaintiff's claim from a physician of its choosing.  Hartford did not disclose the name of the reviewing physician or his/her report to Plaintiff during its administrative review of her claim, or following its final denial in her claim.

28.     Upon information and belief, Plaintiff alleges the reviewing physician may be a long time medical consultant for the disability insurance industry and/or Hartford.  As a result, Plaintiff alleges the reviewing physician may have an incentive to protect his/her own consulting relationship with the disability insurance industry and/or Hartford by providing

medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and which supported the denial of Plaintiff's claim.

29.     In two (2) separate letters dated November 23, 2015 and December 2, 2015, in order to engage Hartford in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Hartford and the opportunity for her and her treating physicians to respond to the reviews prior to Hartford rendering a determination in her claim.

30.     Prior to rendering its final denial in Plaintiff's claim, Hartford never shared with Plaintiff the medical records only "paper review" authored by its reviewing physician so she could respond to the report and perfect her claim.  Hartford's failure to provide Plaintiff with the opportunity to respond to the reviewing physician's report is an ERISA procedural violation, precluded a full and fair review pursuant to ERISA and also violates Ninth Circuit case law.

31.     In a letter dated February 11, 2016, Hartford notified Plaintiff it had denied her claim for long-term disability benefits under the Policy.  In the letter, Hartford also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

32.     Upon information and belief, Hartford's February 11, 2016 denial letter confirms that it failed to provide a full and fair review and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met any definition of disability of disability in the Policy.

33.     In evaluating Plaintiff's claim on appeal, Hartford owed her a fiduciary duty and had an obligation pursuant to ERISA to administer it "solely in [her] best interests and other participants" which it failed to do. [1]

34.     Hartford failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim.  Hartford's failure to investigate the claim and to engage in this dialogue and to ask for or to obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is a violation of ERISA, Ninth Circuit case law and a reason she did not receive a full and fair review.

35.     Plaintiff alleges Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to adequately investigate her claim because the third party vendors it may have retained and those vendors' reviewing medical professionals, or any medical professional who reviewed Plaintiff's claim, were not truly independent or impartial; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and denials; by providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; by failing to engage Plaintiff in a dialogue so she could respond to the reviewing physician's report and submit the necessary evidence to perfect her claim and by failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

36.    Plaintiff alleges a reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Hartford undertook as the decision maker and payor of benefits.  Hartford's conflict of interest provided it with a financial incentive to deny Plaintiff's claim and when it did, it saved itself money.

37.    Plaintiff is entitled to discovery regarding Hartford's aforementioned conflicts of interest, the conflict of interests of any third party vendor who retained any reviewing medical professionals and of *any* individual who reviewed her claim.  The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced Hartford's decision to deny her claim.

38.    With regard to whether Plaintiff meets both definitions of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Hartford as referenced herein abused any discretion that may have been afforded in the Policy and are so flagrant they justify *de novo* review.

39.     As a direct result of Hartford's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled.   Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

40.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

41.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that she meets the "Your Occupation" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to these benefits, and any other non-disability employee benefits she may be entitled to as a result of that Order, from the date she was first denied these benefits through the date of judgment with prejudgment interest thereon;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

C.      Assuming the issue is ripe before the Court (i.e. the "Your Occupation" timeframe in the Plan and/or Policy has expired at the time the Court adjudicates the case and the relevant definition of disability in the Plan and/or Policy is that Plaintiff must be disabled from engaging in "Any Occupation"), for an Order that the evidence in Plaintiff's claim is sufficient to prove that she also meets the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to these benefits along with pre-judgment interest thereon;

D.      Assuming the Court issues an Order that Plaintiff meets the "Any Occupation" definition of disability in the Plan and/or Policy, Plaintiff seeks an Order that Defendants must continue to pay these benefits and any other non-disability employee benefits she may be entitled to as a result of that Order until such a time as she meets the conditions for the termination of these benefits;

E.      Alternatively, if the issue of whether Plaintiff meets the "Any Occupation" definition of disability in the Plan and/or Policy is not ripe before the Court at the time of adjudication because the "Your Occupation" timeframe has not expired, or the timeframe has expired, but the Court determines that it is unable to make an "Any Occupation" determination for any reason, then Plaintiff seeks an Order remanding her claim to the Plan Administrator for an administrative review where she can submit new and additional evidence so the Plan Administrator may determine whether she meets the "Any Occupation" definition of disability;

F.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

G.      For such other and further relief as the Court deems just and proper.

DATED this 26th day of April, 2016.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
      Scott E. Davis
      Attorney for Plaintiff